# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Ronald Ernesto Portillo Portillo,<br><br>                    Petitioner<br><br>v.<br><br>Pamela Bondi, et al.,<br><br>                    Respondents | Case No. 2:26-cv-00155-CDS-NJK<br><br>**Order Granting Petitioner's Writ of Habeas Corpus and Denying as Moot Petitioner's Remaining Motions**<br><br>[ECF Nos. 4, 12, 14] |

On January 27, 2026, petitioner Ronald Ernesto Portillo Portillo filed a petition for writ of habeas corpus. *See* Pet. for writ, ECF No. 4. Portillo Portillo seeks a writ ordering that he be given a bond hearing or released from the respondents' custody. *See id.* The petitioner asserts that he has been detained for "an extended period," *id.* at 9, which I liberally construe as a due process claim challenging his detention as prolonged pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001). The respondents filed an opposition to the petition. Resp., ECF No. 11.[1] This matter is now fully briefed. Reply, ECF No. 15. Also before the court is Portillo Portillo's motion for appointment of counsel, and motion for leave to appear *in forma pauperis* (IFP). Mot., ECF Nos. 12, 14.

Because I find that Portillo Portillo's prolonged detention violates his due process rights, I grant his petition for writ of habeas corpus. I also deny as moot his motions for appointment of counsel.[2]

---

[1] The named respondents are Pamela Bondi, Attorney General for the United States of America, and John Mattos, Warden of the Nevada Southern Detention Center.

[2] I deny as moot his motion for appointment of counsel because I appointed the Federal Public Defender for the District of Nevada (FPD) to represent the petitioner on January 27, 2026. *See* Order, ECF No. 3. The FPD filed notices of appearance on February 3 and 5, 2026. ECF Nos. 7, 8. I also deny as moot this application to proceed IFP. ECF No. 12 Portillo Portillo was granted IFP on January 27, 2026. *See* ECF No. 3.

## I.   Background

Portillo Portillo is a citizen of El Salvador who came to the United States in 2021. *See* ECF No. 4 at 7 (petitioner stating he came to the U.S. in 2021). He was arrested by U.S. Border Patrol in November of 2021. *See* I-213, Resp'ts' Ex. A, ECF No. 11-1 at 3. After his arrest, on January 24, 2022, he was given a credible fear hearing that resulted in an immigration judge determining that the petitioner failed to establish "a significant possibility" that he "would be persecuted on account of a protected ground" or that he "would be intentionally subjected to serious physical or mental harm inflicted by, or at the instigation of, or with the consent or acquiescence of, a government official or other person acting in an official capacity." Credible Fear Findings, Resp'ts' Ex. B, ECF No. 11-3 at 2. The petitioner was thereafter removed to El Salvador on February 4, 2022. ECF No. 11-1 at 3.

On November 14, 2024, the petitioner encountered ICE personnel at the Wasatch County Jail in Utah.[3] *Id.* As set forth in the I-213, the petitioner admitted that he reentered the country near El Paso, Texas, around June 2022 without inspection. *Id.* On December 24, 2024, an immigration judge found that the petitioner had "established a reasonable possibility that the noncitizen would be persecuted on the basis of a protected ground, or a reasonable possibility that the noncitizen would be tortured in the country of removal." Order, Resp'ts' Ex. C, ECF No. 11-4 at 2. So the January 24, 2022 order was vacated, and the petitioner was placed in "withholding-only" proceedings. *Id.*

On April 1, 2025, the same immigration judge held a final hearing regarding his withholding and Convention Against Torture (CAT) application—after which, the petitioner's requested relief was denied. That decision was memorialized in an order dated May 1, 2025. Order, Resp'ts' Ex. D, ECF No. 11-5 at 2. Portillo Portillo was given a redetermination hearing on May 20, 2025, during which the immigration judge determined he was a flight risk due to his

---

[3] It appears the petitioner was taken into custody for traffic-related infractions from August of 2024. ECF No. 11-2 at 4.

applications being denied and his prior removal. Order, Resp'ts' Ex. E., ECF No. 11-6. On November 3, 2025, Portillo Portillo filed an appeal in the Ninth Circuit, which is still pending.[4]

As alleged in the petition, Portillo Portillo was taken into custody in November 2024 and has remained in continuous custody since. *See* ECF No. 4. He asserts that he has no criminal history in this country, which demonstrates he is not a danger to the community. *Id.* at 7. As such, he brings this writ seeking a bond hearing or release.

## II.    Legal standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas*, 533 U.S. at 687 ; *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    Discussion

As a threshold matter, I make two findings. First, and contrary to the respondents' contention, this petition does not "challenge [petitioner's] detention for purposes of executing his final removal order." ECF No. 11 at 6. A simple review of the limited allegations in the petition clearly evidence that the petitioner is challenging the fact that he has been in ICE custody since November 2024. *See* ECF No. 4. Accordingly, I make my second finding: the respondents' arguments that the INA and REAL ID deprive this court of jurisdiction are irrelevant to resolution of this petition. The Supreme Court has interpreted the jurisdiction-stripping provision in § 1252(g) provisions narrowly, limiting it to "three discrete actions": the

---

[4] The court verified the petitioner's appeal was still pending as of March 19, 2026.

"'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)). The Court later explained that it did not interpret Section 1252(g) "to sweep in any claim that can technically be said to "arise from" the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Rather, the Court reads "the language to refer to just those three specific actions themselves." *Id.* Accordingly, because the petitioner is challenging the constitutionality of his immigration-related detention, rather than the removal order itself, this court has jurisdiction over this action.[5] *See Zadvydas*, 533 U.S. at 688 (explaining a district court may review immigration-related detentions to determine if they comport with the requirements of the Constitution).

I thus turn to whether the petitioner's continued detention violates his Fifth Amendment right to due process. The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. Authority delegated to the Attorney General, such as those related to immigration proceedings, is still subject to due process's requirements. *See id.* at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). Indeed, the Supreme Court has repeatedly recognized "that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979).

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231.[6] Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not

---

[5] Counsel for the respondents is cautioned that responses to petitions must address the actual allegations raised therein, with properly supported authority.

[6] The parties do not dispute that 8 U.S.C. § 1231(a) applies here. *See* ECF No. 11 at 10; *see* ECF No. 15 (discussing § 1231).

leave or is not removed within the removal period, the [noncitizen], pending removal, **shall be** under regulations prescribed by the Attorney General." *Id.* at § 1231(a)(3) (emphasis added).

Here, Portillo Portillo's detention has long surpassed both the 90-day and the 180-day periods of presumptive reasonableness. Indeed, the petitioner has been in detention approximately 16 months, and it has been approximately 10 months since an immigration judge determined he posed a flight risk at his withholding proceeding. "Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable." *Kadir v. Larose*, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) (collecting cases). And the petitioner's future detention can last several more months, if not years, while his case works its way through the appeals process.

The respondents' position that the petitioner has not even begun the 90-day removal period because of his Ninth Circuit appeal is wholly unsupported by any points and authorities, likely because it runs afoul of precedent holding that an alien is entitled to release on bond unless the government establishes that that person is a flight risk or a danger to the community. Indeed, in *Casas-Castrillon v. Department of Homeland Security*, the Ninth Circuit considered the prolonged detention of aliens under § 1226(a) while seeking direct judicial review of their administratively final orders of removal. 535 F.3d 942 (9th Cir. 2008). Casas-Castrillon was a legal permanent resident who was detained in 2001 when the government initiated removal proceedings against him. *Id.* at 944–945. The petitioner remained in detention for the next seven years, during which he was in removal proceedings before the immigration court, BIA, and the Ninth Circuit. *Id.* Ultimately, the Ninth Circuit concluded, "as a matter of statutory interpretation," that "§ 1226(a) requires the Attorney General to provide aliens with a bond hearing before an immigration judge to determine the necessity of their ongoing detention." *Id.* at 950–52. The court also concluded that "an alien is **entitled** to release on bond unless the 'government establishes that he is a flight risk or will be a danger to the community.'" *Id.* at 951 (emphasis added) (quoting *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005)). The Ninth Circuit

reached the same conclusion for individuals detained under § 1226(c). *See Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013).

Like *Casas-Castrillon* and *Rodriguez*, the petitioner is entitled to a bond hearing to determine if he is a flight risk or will be a danger to the community, and his continued detention without one violates his due process rights. While the government is entitled "to carry out its duty to enforce the mandates of Congress, it must do so in a manner consistent with our constitutional values." *Id.* at 1146. So I grant Portillo Portillo's petition to ensure those constitutional values are upheld. The petitioner is entitled to a prompt and individualized bond hearing, at which the respondents must justify his continued detention by a showing of clear and convincing evidence that the petitioner would likely flee or pose a danger to the community if released. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond"), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Martinez v. Clark*, 124 F.4th 775, 785-86 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)).

IV.     Conclusion

IT IS HEREBY ORDERED that Ronald Ernesto Portillo Portillo's petition for writ of habeas corpus **[ECF No. 4] is GRANTED.**

IT IS FURTHER ORDERED that the respondents give Portillo Portillo a bond hearing by March 27, 2026.

IT IS FURTHER ORDERED that the Portillo-Portillo's motion to proceed IFP **[ECF No. 12] is DENIED as moot.**

IT IS FURTHER ORDERED that the Portillo-Portillo's motion for appointment of counsel **[ECF No. 14] is DENIED as moot.**

IT IS FURTHER ORDERED that the respondents must file a status report within 48 hours of the bond hearing advising (1) when the hearing occurred and (2) the outcome of that hearing.

Dated: March 23, 2026

_____
Cristina D. Silva
United States District Judge